## BRADFORD *a.* THE GREENWICH INSURANCE COMPANY.

*New York Superior Court; General Term, May,* 1859.

OPENING DEFAULT.—AUTHORITY OF A PRECEDENT INSURANCE.

It is the practice of the New York Superior Court, where a default is taken on the first day of term, to open it, and permit the case to be argued upon just terms, if application is made without delay, at the same term,—unless some bad faith appears, or there is reason to believe that the appeal is frivolous or the purpose is delay.

Although where the questions involved have been plainly and distinctly passed upon by the Court of Appeals in other cases, the default should not be opened; yet, if the question in the case at bar may be distinguished from the precise questions actually decided by that court in previous cases, the fact that just inferences from such decisions must satisfy the court below that they ought to hold against the moving party, his default should be opened on terms, that he may be able to raise before the Court of Appeals, the precise question in his case.

Under such circumstances, a motion to open a default taken at the April general term was allowed on payment of costs of April term, ten dollars costs of motion, and on stipulation that the cause be placed on the calendar of the May general term, and argued without further notice.

Whether a mortgagee can collect the insurance after the mortgage debt is paid; and whether it can be collected by or for the use of the mortgagor, where he is the person paying the premium,—*Query ?**

---

* BEACH *a.* THE BOWERY FIRE INSURANCE COMPANY.—*New York Superior Court; General Term, March,* 1859.—This case presented somewhat similar questions. The cause was tried before the court without a jury, and the following facts were established :

The defendants were a corporation, duly organized as such under and according to the laws of the State of New York ; and as such corporation, duly authorized to issue policies of insurance against loss or damage by fire. By a policy of insurance dated the 24th of July, 1847, and numbered (94,915), they insured Lewis Beach, upon several buildings then owned by him in fee, and in said policy particularly described, against loss or damage by fire ; and among others, " on the one and a half story frame building, on rear of last named, privileged for a cabinet-maker's shop, $400."

Bradford *a.* The Greenwich Insurance Company.

This was an action on insurance policies held by the plaintiff, as mortgagee, as collateral security for the mortgage debt. The details of the facts are stated in the opinion. The plain-

By the policy the defendants did "promise and agree to make good unto the said insured, his executors, administrators, and assigns, all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire," to the said insured property during the time specified in said policy—to wit, from 12 o'clock at noon of the day of its date, to 12 o'clock at noon of the 24th of July, 1848.

The premium was duly paid by Lewis Beach to the defendants on the issuing of the policy. The like premium was paid by Lewis Beach to the defendants, and received by them for the purpose of renewing or continuing the policy in force, on every 24th of July, succeeding the date of the policy, during the lifetime of Lewis Beach, who died intestate on the 14th of February, 1851, seised in fee of all the property insured by said policy, leaving him surviving, his widow, the plaintiff, and six children, his only heirs at law, all of whom were still living.

The plaintiff on the 26th of August, 1851, was duly appointed his administratrix.

On each 9th of July since the death of Lewis Beach, the plaintiff paid to the defendants the premiums named in the policy, down to and including the 9th of July, 1856.

At the time of each of such payments, as well those made by Lewis Beach, in his lifetime as those since made by the plaintiff, the defendants, by their president and secretary, signed a certificate acknowledging the receipt of such payment, and declaring the policy to be thereby continued in force for one year from the date of such payment and certificate.

The certificate of renewal given after the death of Lewis Beach were in the same form as those issued and delivered to him in his lifetime. The following is a copy of that given on the 9th of July, 1855, viz. :

On brick front house, paint-store, 255 Bowery.....................$2500
On brick house on rear ..........................................  500
On     "      rear, do........................................  800
On frame cabinet-maker's shop...................................  400
                                                            _____
                                                              $4200

| No. 124 Bowery, corner of Grand-st. | OFFICE OF THE NEW YORK BOWERY FIRE INSURANCE COMPANY. |
|---|---|
| | Ass'd, H. Brevoort & J. Odell. |
| | **No. 151,500.**                     New York, July 9, 1855: |
| | Received of Lewis Beach forty dollars, being the premium on forty-two hundred dollars, insured under policy No. 94,915, which is hereby continued in force one year—to wit, from the 9th of July, 1855, until the 9th day of July, 1856, at noon. |
| | Attest,                              WM. HIBBARD, |
| | G. G. Taylor,                            President.. |
| | Secretary. |

Bradford *a.* The Greenwich Insurance Company.

tiff obtained judgment by default at the general term, and this ·
the defendants now moved to vacate.

BY THE COURT.—WOODRUFF, J.—On the 18th day of Novem-·

The policy was assigned with the consent of the defendants by Lewis Beach, in
his lifetime, to Henry Brevoort & Jacob D. Odell, who then held a mortgage
upon the insured premises, as additional security for the payment of said mort-
gage ; and the indorsement was then made on the policy by the assent of Lewis
Beach and of the defendants, as " Loss, if any, payable to Brevoort & Odell."

Such mortgage was paid in full on the 14th of August, 1857, since which time
Brevoort & Odell have not, nor has either of them, had any interest in the policy.

On the 1st day of June, 1857, one of the buildings insured was totally destroyed
by fire, and actual loss was sustained thereby to the full amount of $400, the sum
insured thereon.

Preliminary proofs of loss were served on the defendants by the plaintiff in
due time, and more than sixty days before the commencement of this suit ; which
proofs were in all respects such as the policy required to be served, provided the
plaintiff was the proper person to make and serve such preliminary proofs.

The ninth of the conditions annexed to the policy, and forming part of it was,
that "persons sustaining loss or damage by fire shall forthwith, and without delay,
give notice thereof in writing to the company, and as soon after as possible shall
deliver," what is commonly designated the preliminary proofs of loss.

The eleventh and twelfth of the conditions were as follows :

XI. " Payment of loss shall be made in sixty days after the loss shall have been
ascertained and proved, without any deduction whatever."

XII. " Insurances, once made, may be continued for such further term as may be
agreed on, the premium required therefor being paid and indorsed on the policy,
or a receipt given for the same ; and all insurances, original or renewed, shall be
considered as made under the original representation, in so far as it may not be
varied by a new representation in writing ; which in all cases it shall be incum-
bent on the party insured to make, where the risk has been changed, either within
itself or by the surrounding or adjacent buildings."

*Lewis Beach,* for plaintiff.—The answer to the complaint sets up—

1. That this action should have been brought by the heirs, as the premises in-
sured were parts of the real estate of Lewis Beach.

2. That the action should have been brought by Brevoort & Odell, the assignees
of the policy, to whom the loss, if any, was payable.

3. That the preliminary proofs were insufficient, in that they were put in by the
wrong party.

As to the last-named objection, it may be dismissed from further attention, for
if this action is properly brought, the preliminary proofs, as a matter of course,
were sufficiently and properly rendered by the administratrix.

I. As to the first objection, insurance is a personal contract (*Ang. on Ins.*, §§ 1,
199 ; 2 *Duer on Ins.*, 53), and an action on it must therefore be brought by the
representative, not by the heir.   (1 *Chitt. Pl.*, 19 ; 3 *Ves.*, 472.)   Moreover—

II. As to the second objection. Brevoort & Odell are not the real parties in inter-
est, for their debt being paid, their interest ceases. (2 *Code R.*, 65 ; *Ang. on Ins.*,

ber, 1853, the plaintiff held a policy of insurance issued by the defendants, whereby they declared that, in consideration of the payment of the premium mentioned, they did " insure Samuel

§§ 211, 59 ; 2 *Barb.*, 420 ; 4 *Cow.*, 13 ; Smith *a.* Columbian Insurance Company, *Boston Law R.*, June, 1852.) If they could maintain an action, it would be as trustees of an express trust, under section 113 of the Code. The contract, however, is not made in their name, and they do not come within the definition of that section. If they had been, however, the trust had ceased by virtue of the provisions of the Revised Statutes respecting trusts. (2 *Rev. Stats.*, 141.) And in this case the assignment provides that if the mortgage is paid, the assignment shall become void.

*A.* & *M. S. Thompson*, for the defendants.—I. The policy was taken out by Lewis Beach in his lifetime, and indorsed, " Loss, if any, payable to Brevoort & Odell." The receipts and renewals show that the contract of insurance has been continued, but never altered in any respect. Jefferson Insurance Company *a.* Cotheal (7 *Wend.*, 72), was a case of a policy indorsed, " In case of loss, payment to be made to H. & D. Cotheal ; and H. & D. Cotheal recovered. The case in 2 *Code R.*, 65, differed from this, as the broker directed the loss to be payable to him, when in fact he had no insurable interest.

II. All that the books can mean by a policy being a personal contract, and not running with the land, is, that it is not a contract that will enure to the benefit of the grantee of the land, and could not be construed so as to avoid the policy when claimed by the heir or devisee : the person claiming must have an insurable interest. (1 *Phil. on Ins.*, 67.) By law, as well as by the contract of insurance, the contract is void or ceases whenever the insurable interest ceases. The case in 3 *Ves.*, 472, was decided on the peculiar articles of association of the insurers ; but the true principle is referred to in the same case in 2 *Atk.*, 554, to wit, that the party owning the property is the party who is in danger of loss, and who is the only one to recover.

III. Mrs. Beach cannot voluntarily make herself a trustee, and the action must be brought either in the name of the heirs of Lewis Beach, or in that of Brevoort & Odell.

IV. If Mrs. Beach can recover here as administratrix, the rule that the party recovering must have an interest in the property, which has never been varied from, is abolished, and there is nothing to prevent any amount of gambling policies. If she does recover, the amount becomes assets ; and whatever might be the effect in this case, in general, where the buildings are the main value, it would divert the property from heirs and devisees.

BOSWORTH, Ch. J., after finding the facts above mentioned, stated his conclusions of law as follows :

1st. Brevoort & Odell having received full payment of the mortgage to secure the payment of which the policy was assigned to them, an action on the policy to recover for a loss from the perils insured against, need not be brought in their names.

2d. Had a loss occurred between the time of the death of Lewis Beach and the 24th of July next thereafter, an action might have lain in the name of the plaintiff, as administratrix, upon the policy ; but the suit (Brevoort & Odell's claim being fully satisfied) would have been for the benefit of those to whom the

D. Bradford, mortgagee, against loss or damage by fire to the amount of $2250," on certain premises described therein.

The insured premises had once been owned by Bradford, and were sold by him. On such sale he received a mortgage upon the premises as security for the payment, by the purchaser, of the consideration of the sale, or a portion thereof. And upon the happening of this change in his relation to the premises, his agent took the policy of insurance theretofore held by him to the defendants, and they altered its terms so as to read as above stated (as an insurance of Bradford, *mortgagee*), and redelivered the policy thus altered. On the 24th July, 1853, the defendants received the annual premium for the renewal of the policy, and gave a receipt by which they acknowledged that they have received such premium from Samuel D. Bradford, mortgagee, and continue the policy in force for one year.

It appeared in evidence that the mortgage so held by Bradford was to secure the payment of $21,000 ; and that the mortgage contained a covenant by the mortgagor, that he would keep the buildings upon the mortgaged premises insured to the amount of *at least* $10,000 ; and would assign the policies of insurance to Bradford.

Instead of an insurance in the name of the mortgagor, assigned by him to the mortgagee, insurance was effected with

property had descended, and she would have held any money she might have recovered, not as assets, but as their trustee.

3d. At the time of the renewal made on the 9th of July, 1851, and at the time of each subsequent renewal of the policy, and at the time of the loss, the plaintiff as administratrix had no interest in the property insured.

4th. The payment by her of the several premiums which she paid to renew the policy, and taking the receipt and certificate given to her at the time of making such payments, no more entitle her to sue as administratrix to recover for the loss in question, than similar payments by an entire stranger to all the parties, and to the property itself, would entitle such stranger, in case of a loss, to sue in his own name.

5th. However unjust it may be thought to be, that the defendants in this case refuse to pay the loss (if they do refuse to pay it to the heirs of Lewis Beach), the present plaintiff has no right of action upon the facts proved, and the defendants are entitled to judgment dismissing the plaintiff's complaint. (Rook *a*. Worth, 1 *Ves. Sr.*, 460 ; Nones *a*. Harrison, 2 *Mad.*, 268 ; Parry *a*. Ashley, 3 *Sim.*, 97 ; Durant *a*. Friend, 11 *Eng. L. & E. R.*, 2 ; Hamilton *a*. Baldwin, 19 *Ib.*, 283 ; The Quebec Fire Insurance Company *a*. St. Louis, 22 *Ib.*, 73.) See also 2 *Atk.*, 554, and 3 *Ves.*, 472.

the defendants as above stated, and in two other companies, in the name of Samuel D. Bradford, mortgagee, the three policies amounting to $7000, or thereabouts. And the mortgagor effected other insurances on different and distinct parts of the mortgaged premises to the amount of $8000, and assigned these policies to the mortgagee, the plaintiff.

The agent of the mortgagor paid the premium of insurance to the defendants out of the rents of the premises, taking a receipt in the plaintiff's name.

The plaintiff holding the defendants' policy under these circumstances, on the said 18th day of November, 1853, the buildings, &c., covered by the defendants' policy, were destroyed by fire.

This action was brought to enforce payment of the amount of the insurance. Issue was joined thereon. But pending the action, and on the 31st day of March, A. D. 1856, the mortgage to the plaintiff was paid in full, and he executed a certificate of satisfaction and consent that the mortgage be discharged of record.

The defendants being apprised that the plaintiff's mortgage was paid, obtained leave to file a supplemental answer, and therein set up as a defence such payment and satisfaction of the mortgage, relying thereon as an extinguishment of all the plaintiff's interest in the subject in controversy.

The defendants also claim that the insurance being an insurance of the plaintiff as mortgagee only, they are entitled, upon payment to him of the sum insured, to be subrogated to his rights as mortgagee to the extent of the sum insured; and they having offered to pay the amount of the loss, provided the plaintiff would assign to them a proportionate amount of the mortgage debt; and he having refused so to assign, they ought not to be charged in this action.

It is the familiar and constant practice of this court, where a default is taken on the first day of term, to open it and permit the case to be argued upon just terms, if application is made without delay at the same term, unless some bad faith appears, or there is reason to believe that the appeal is frivolous, or the purpose is delay.

But if, as now insisted by the counsel for the plaintiff, all the questions involved in this suit which arise on the appeal herein, have been plainly and distinctly decided by the Court

of Appeals in Kernochan *a.* The Bowery Insurance Company (17 *N. Y. R.*, 428), we should not think it just to open the default therein. No reason could be assigned for opening such default which would commend itself to our consideration. The only advantage the defendants would gain is the chance of inducing the Court of Appeals to change their decision ; and although the changes occurring yearly in the membership of that court may render that chance worth pursuing, we ought not, we think, to be influenced by an expectation that that court will reverse its own decision within so short time after the decision of the case referred to, as they would be called on to do on an appeal in this action.

The only point in which it is suggested that the present case differs from Kernochan *a.* The Bowery Insurance Company, is, 1st, That in that case it affirmatively and distinctly appeared that the insurance was effected in pursuance of an agreement between the mortgagor and mortgagee, that the latter should insure the premises and the mortgagor should pay the premium ; and the understanding was, that the insurance should be kept up for the benefit of such mortgagors ; and, 2d, That in that case the mortgage debt had not been paid, and so the plaintiff was prosecuting the action for his own benefit, although the mortgagors were interested therein.

We do not perceive that in the first-named particular this case differs from the other.

Here there was an agreement that the mortgagor should keep the premises insured, and the policies assigned as collateral security to the mortgage debt—to an amount of at least $10,000. In substance, this, according to the evidence, was done, not according to the very letter of the agreement, yet substantially so. Policies were assigned to a part of the amount named, and other policies were procured at the expense of the mortgagor for the residue.

The aggregate, it is true, exceeded the *lowest* limit to the amount; but the agreement being that the insurances to be procured by the mortgagor should not *be less than* $10,000, the whole transaction shows that the insurance to the amount of $15,000 was obtained for the better security of the plaintiff in performance of the agreement.

But upon the other point we think counsel should have an opportunity to be heard.

In Kernochan *a.* The Bowery Insurance Company, the mortgage debt was subsisting at the time of the trial. The court held that the insurance was an insurance of the property : that Kernochan was entitled to the property as security for the debt : that if that property was so injured as to diminish its value, Kernochan was entitled to have it made good by the defendants, who had insured him.

Although other propositions are stated in the opinions which undoubtedly sustain the claim of the plaintiff in this case, the court do not, in fact, decide that if in that case Coolidge the mortgagor had paid the debt he could have collected the insurance. The questions whether a mortgagee can collect the insurance after the mortgage debt is paid, or whether the insurance can be collected by or for the use of the mortgagor wherever he is the person paying the premium, were not the precise questions before the Court of Appeals. And though we should be satisfied by a train of reasoning, that just inferences from what was decided might require us so to hold, we should nevertheless feel bound to permit the appellants to place themselves in such a position on the record, that they may, if they please, raise these distinct questions in that court. This they cannot do if the default be retained, since on judgment of affirmance by default they could not be heard in that court.

Judgment of affirmance set aside, and default opened on payment of costs of April term, and $10 cost of motion, and on stipulation that the cause be placed on the calendar of May general term and argued without further notice.